UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRINA ANDERSON,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHERNUT, et al.,<br><br>Respondents. | No. 1:26-cv-01960-DAD-CKD<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT<br><br>(Doc. Nos. 1, 2) |

On March 11, 2026, petitioner Alejandrina Anderson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.)  That same day, petitioner also filed a motion for temporary restraining order requesting her immediate release.  (Doc. No. 2.)  On March 13, 2026, respondents filed a combined opposition to petitioner's motion for a temporary restraining order and answer to the petition for writ of habeas corpus.  (Doc. No. 7.)  Respondents state therein that they are amendable to the Court ruling on the underlying petition for writ of habeas corpus based on the briefing presently before the court and that they waive any hearing regarding injunctive relief.  (*Id.* at 1.)  On March 17, 2026, petitioner filed a reply in support of her motion for temporary restraining order.  (Doc. No. 9.)

/////

1

In support of her motion, petitioner provides evidence of the following.

Petitioner entered the United States on December 19, 2005, and was permitted to remain until June 17, 2006. (Doc. No. 2-3 at 4.) Petitioner previously received Deferred Action for Childhood Arrivals ("DACA") but lost that status after she suffered a "DUI" conviction in 2024. (Doc. No. 2-4 at 10.) Petitioner is married shares six children with her spouse, all of whom live in the United States. (Doc. Nos. 2-3 at 11–14; 2-4 at 10.) On February 21, 2020, petitioner was granted advance parole, which lasted until February 21, 2021.[1] (Doc. No. 2-3 at 9.) On December 11, 2025, petitioner was arrested by the Las Vegas Police Department in connection with her 2024 DUI conviction and sentence. (Doc. No. 2-4 at 8.) Petitioner was held at the Clark County Detention Center in Las Vegas from December 11, 2025, to January 13, 2026. (*Id.*) Petitioner was transferred to Immigration and Customs Enforcement ("ICE") custody on or about January 13, 2026. (*Id.* at 8–9.) On January 15, 2026, petitioner was issued a Notice to Appear for removal proceedings alleging that she is removable pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act, codified 8 U.S.C. § 1227(a)(1)(B). (Doc. No. 2-3 at 4.)

In support of their opposition to petitioner's temporary restraining order and answer to the petition for writ of habeas corpus, respondents present evidence of the following.

Immigration authorities took custody of petitioner on January 15, 2026.[2] (Doc. No. 7-1 at 2.) On March 12, 2026, the day after petitioner filed her petition for writ of habeas corpus and motion for a temporary restraining order, respondents provided petitioner a bond hearing before an immigration judge ("IJ"). (Doc. No. 7-4 at 1–2.) The IJ denied bond because he found that petitioner is a danger to the community due to her "two arrests for DUI," one of which resulted in a conviction. (*Id.*)

[1] Petitioner alleges this grant of parole was pursuant to 8 U.S.C. § 1182(d)(5). (Doc. No. 9 at 2.)

[2] Petitioner states she was taken into ICE custody on January 13, 2026, (Doc. No. 2-4 at 8–9) while respondents state petitioner was taken into ICE custody on January 15, 2026 (Doc. No. 7-1 at 2). Both parties appear to agree that ICE took custody of petitioner from the Clark County Detention Center (Doc. Nos. 2-4 at 8–9; 7-1 at 2), and the exact date does not substantively affect the court's analysis set forth below. Therefore, the court need not determine the exact date on which respondents took custody of petitioner.

2

Petitioner argues that she was detained in violation of her due process rights because she was unlawfully detained without a pre-deprivation bond hearing.  (Doc. No. 2-1 at 9.)  Respondents argue that petitioner was lawfully detained pursuant to 8 U.S.C. § 1226(a), which entitles her only to a post-detention bond hearing.  (Doc. No. 7 at 3–4.)  Petitioner argues in her reply that her previous grant of advance parole and DACA required the government to assess whether she posed a danger to the community or a flight risk, and that she therefore had a liberty interest in her continued release such that she should have been provided a pre-detention bond hearing.  (Doc. No. 9 at 2–3.)

This court has previously found that the government's knowing decision not to detain an individual creates a liberty interest in their continued release.  *See Kalkan, v. Chestnut, et al.*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026).  The court incorporates and adopts that analysis here.  In petitioner's case, the government has been aware of petitioner's presence in the United States for years.  Most recently, petitioner was granted advance parole pursuant to 8 U.S.C. § 1182(d)(5), which necessarily required a determination that she did not pose "a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  The government's decision not to detain petitioner created a liberty interest in her continued release.  *See Rocha Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (finding the petitioner obtained a liberty release in his continued release when he was paroled into the United States after being detained).  Even though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release.  *D.L.C., v. Wofford*, No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.") (collecting cases).  In this regard, petitioner had obtained a liberty interest in her continued release and is entitled to due process.

"To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors:  (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (3) the countervailing government

3

interest." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *2 (C.D. Cal. Mar. 9, 2026). Petitioner's private interest weighs heavily in her favor in light of the length of time petitioner has resided in the United States and her continuing community ties. *See Rocha Chavarria*, 2025 WL 3533606, at *4.

Further, the risk of erroneous deprivation is high where a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention. *See Nurlan Gudavasov*, 2026 WL 712827, at *2. Petitioner ". . . was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025); *see* 8 C.F.R. § 212(e)(2)(i) (requiring written notice of termination of parole); *see also* 8 C.F.R. § 287.8(2) (requiring a warrant for arrest unless the person is likely to escape prior to arrest) and 8 C.F.R. § 287.3 (requiring examination of the arrestee and notification of the reason for his or her arrest when a person is arrested without a warrant). Nothing in the record before the court suggests that an arrest warrant was issued for petitioner nor that petitioner was given notice of the reason for her detention when she was detained by immigration authorities in January of 2026. While petitioner was provided a Notice to Appear for removal proceedings on January 15, 2026, that notice simply states that petitioner is removable because she overstayed her visa in 2006. (Doc. No. 2-3 at 4.) The notice does not provide a reason for petitioner's detention 20 years later. Petitioner was then held in immigration detention for two months without any form of custody determination hearing. In fact, petitioner was not provided a bond hearing until after she requested federal habeas relief from this court. (Doc. No. 7-4 at 1–2.) When the government fails to follow its own regulations, fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing the risk of erroneous deprivation is high. *See Nurlan Gudavasov*, 2026 WL 712827, at *2 (noting the high risk of erroneous deprivation when the petitioner did not receive a pre-detention bond hearing); *H.J.G.G. v. Wofford*, No. 1:25-CV-01718-JLT-EPG, 2025 WL 3761803, at *7 (E.D. Cal. Dec. 30, 2025), *report and recommendation adopted*, No. 1:25-cv-01718-JLT-EPG, 2026 WL 320331 (E.D. Cal.

/////

4

Feb. 6, 2026) (noting the importance of a hearing before a person is deprived of their liberty interest).

Finally, with regard to the government's interest, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, v. *Bondi, et al.*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026).

Respondents argue that petitioner has received all the process due to her because she received a post-deprivation bond hearing. (Doc. No. 7 at 3–4.)  The court disagrees.  A post-deprivation bond hearing provided two months after petitioner's detention and only after she has sought federal habeas relief does not satisfy due process.

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon [v. Burch]*, 494 U.S. [113, ]127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. [v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) . . .]; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

*H.J.G.G.*, 2025 WL 3761803, at *9.  Respondents have not argued that they had a valid governmental interest which justified postponing a hearing until well after petitioner's detention. (*See* Doc. No. 7.)  Further, many district courts in this circuit have determined that petitioners who have been previously released are entitled to pre-deprivation bond hearings.

> "While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno[v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026)] (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). In *Perez Bueno*, considering the specific context where a petitioner "was released from civil immigration detention after his initial

apprehension and is now re-detained," the court determined that due process requires notice and a pre-deprivation hearing before detention, and that the proper remedy for a failure to provide such process is immediate release from detention. *Id*. at \*3–4. Other courts have similarly concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing. *See, e.g., Domingo v. Kaiser*, 2025 WL 1940179, at \*3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted); *Hasratyan*, 2026 WL 288909, at \*4 (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); *but see Aguilar v. Semaia*, [No. 5:26-cv-00023-MCS-SSC,] 2026 WL 166906, at \*5 (C.D. Cal. Jan. 16, 2026) (concluding that although the petitioner should have received a pre-deprivation hearing, the post-deprivation bond hearing afforded the petitioner adequate procedural safeguards because the petitioner challenged the immigration judge's substantive decision to deny bond).

*Nurlan Gudavasov*, 2026 WL 712827, at \*3.

Finally, at a pre-deprivation bond hearing where the petitioner has obtained a liberty interest in their continued release, the government bears the burden of proving by clear and convincing evidence that petitioner is a danger to the community or a flight risk.[3] *H.J.G.G.*, 2025 WL 3761803, at \*9 (citing *Martinez v. Clark*, 124 F.4th 775, 784–86 (9th Cir. 2024); *see also J.E.H.G. v. Chestnut, et al.*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at \*14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, the court finds that petitioner's detention absent a pre-detention bonding hearing where respondents would bear the burden to show that petitioner is either a flight risk or a danger to the community violated due process.

---

[3] Because the court finds that petitioner was entitled to a pre-detention bond hearing and her detention absent such a bond hearing violates due process, the court does not evaluate whether petitioner's post-detention bond hearing comported with the requirement that the burden of proof be placed on respondents when the IJ made his determination.

For the reasons explained above,

1. Petitioner's petition for writ of habeas corpus (Doc. No. 1) is GRANTED as follows:

    a. Respondents are ORDERED to immediately release petitioner from respondents' custody;

    b. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge where respondents will have the burden to demonstrate by clear and convincing evidence that petitioner is a danger to the community or a flight risk;

    c. Petitioner's request for attorney's fees and costs pursuant to 28 U.S.C. § 2412 is DENIED without prejudice to bringing a properly noticed and supported motion;

2. Petitioner's motion for a temporary restraining order (Doc. No. 2) is hereby DENIED as having been rendered moot in light of this order granting petitioner habeas relief on the merits; and

3. The Clerk of the Court is directed to ENTER judgment in favor of petitioner and to close this case.

IT IS SO ORDERED.

Dated:   **March 24, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE